Steven M. Aaron (Arizona Bar No. 028656)
DENTONS US LLP
2398 E. Camelback Road, Suite 850
Phoenix, AZ 85016-9007
Tel:  (816) 460-2476
Fax:  (816) 531-7545
Email:  steven.aaron@dentons.com

Ronald D. Kent (pending admission *pro hac vice*)
Susan M. Walker (pending admission *pro hac vice*)
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300
Facsimile:  (213) 623-9924
Email:  ronald.kent@dentons.com
Email:  susan.walker@dentons.com

Kathleen D. Monnes (pending admission *pro hac vice*)
Joseph K. Scully (pending admission *pro hac vice*)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103-1212
Telephone: (860) 275 0103
Facsimile:  (860) 881 2482
Email:  kdmonnes@daypitney.com
Email:  jkscully@daypitney.com

Attorneys for Plaintiffs
Travelers Property Casualty Company of America and
The Phoenix Insurance Company

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation and THE PHOENIX INSURANCE COMPANY, a Connecticut corporation,<br><br>　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>INSYS THERAPEUTICS, INC., a Delaware corporation,<br><br>　　　　　　Defendant. | Case No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

105810793\V-1

1. Plaintiffs The Phoenix Insurance Company and Travelers Property Casualty Company of America (collectively "Travelers") seek a declaration that they are not obligated to defend or indemnify defendant Insys Therapeutics, Inc. ("Insys"), under liability insurance policies issued by Travelers to Insys, in connection with five lawsuits: (a) *Cheryl Hartsfield vs. Insys Therapuetics, Inc., et al.*, Circuit Court of Pulaski County, Arkansas, No. 60CV-17-5581 (the "Arkansas Action"); (b) *County of Rensselaer vs. Purdue Pharma L.P., et al.*, Supreme Court of the State of New York, County of Rensselaer and *County of Schoharie vs. Purdue Pharma L.P., et al.*, Supreme Court of the State of New York, County of Schoharie, No. 2017-395 (collectively, the "New York Actions"); (d) *County of Multnomah vs. Purdue Pharma, LP, et al.*, Circuit Court of the State of Oregon for the County of Multnomah, No. 17CV33413 (the "Oregon Action"); and (e) *County of Upshur vs. Purdue Pharma, L.P., et al.*, United States District Court, Eastern District of Texas, No. 2:17-cv-00672 (the "Texas Action").

## THE PARTIES

2. Plaintiff The Phoenix Insurance Company ("Phoenix") is a corporation duly organized and existing under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut. Phoenix is a citizen of Connecticut within the meaning of 28 U.S.C. § 1332(c)(1). Phoenix issued certain primary insurance policies to Insys.

3. Plaintiff Travelers Property Casualty Company of America ("Travelers Casualty") is a corporation duly organized and existing under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut. Travelers Casualty is a citizen of Connecticut within the meaning of 28 U.S.C. § 1332(c)(1). Travelers Casualty issued certain umbrella insurance policies to Insys.

4. On information and belief, Insys is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Chandler, Arizona. Insys is a citizen of Delaware and Arizona within the meaning of 28 U.S.C. § 1332(c)(1).

- 2 -

105810793\V-1

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 2201 and 2202, as there is complete diversity of citizenship between Plaintiffs and Insys and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. The insurance policies that are the subject of this action were issued to Insys in Chandler, Arizona.

**FACTUAL ALLEGATIONS**

7. This action results from Insys' claim for coverage under primary and umbrella commercial general liability insurance policies issued by Travelers to Insys during the period from August 1, 2015 to August 1, 2017 (collectively the "Policies"). The Policies are identified on the table attached hereto as Exhibit A.

8. Insys was aware at least as early as May, 2015, that governmental entities had been conducting investigations concerning Insys' sales and marketing of its drug Subsys in a manner linked to prescription drug abuse.

9. At least as early as May, 2015, Insys had received Civil Investigative Demands ("CIDs") from the State of Arizona, the State of Oregon, the Commonwealth of Massachusetts, and the State of Illinois in furtherance of an investigation regarding its drug Subsys, including Insys' sales and marketing practices related to its drug Subsys.

10. In October, 2017, Peter Berardinucci of Aon Risk Solutions, on behalf of Insys, tendered the Arkansas, New York, Oregon and Texas Actions to Travelers for coverage under the Policies. True and accurate copies of the complaints filed in those actions are attached hereto, respectively, as Exhibit B, Exhibit C, Exhibit D, Exhibit E and Exhibit F.

11. The Arkansas, New York, Oregon and Texas Actions each name Insys as a defendant.

12. The allegations regarding Insys' conduct in each of the Arkansas, New York, Oregon and Texas Actions are substantially similar.

**The Arkansas, New York, Oregon and Texas Actions**

13.     The Arkansas Action was filed in the Circuit Court of Pulaski County, Arkansas, by Cheryl Hartsfield ("Hartsfield").  According to the complaint, Insys manufactured "one of the most potent and addicting opioids in the world, Fentanyl Spray," and "devised and executed a fraudulent and illegal scheme" to market it to thousands of unsuspecting consumers," including Hartsfield, and "[t]hrough the foregoing deceptive scheme, Insys successfully promoted and created a large and growing market for Fentanyl Spray that was incredibly lucrative," and "[a]t the same time, the deceptive scheme … exposed tens of thousands of patients to the dangerous side effects of Fentanyl Spray, created addiction problems, and ruined lives of consumers, including [Hartsfied]."  Complaint in the Arkansas Action ("Arkansas Compl.") ¶¶ 5, 15-18.

14.     The Arkansas Complaint recounts the illegal and fraudulent scheme in detail, which allegedly included Insys paying illegal kickbacks to doctors (*id.*, ¶¶ 22-34), making misrepresentations to insurers and others to obtain reimbursement (*id.*, ¶¶ 35-38) and acting in concert with others to dispense Fentanyl Spray to thousands of unsuspecting patients (*id.*, ¶¶ 39-41), including Hartsfield.  *Id.*, ¶¶ 42-50.

15.     The Arkansas Complaint includes multiple counts against Insys, each of which incorporates the above-described factual allegations regarding Insys' illegal and fraudulent scheme.  *Id.*, ¶¶ 51-82, 90-97.  The counts in the Arkansas Complaint asserted against Insys are:

      i.     Count 1: Fraud and Deceit;

      ii.    Count 2: Common Law Fraud and Deceit;

      iii.   Count 3: Breach of Fiduciary Duty;

      iv.    Count 4: Violations of the Arkansas Deceptive Trade Practices Act;

      v.     Count 5: Civil Conspiracy;

      vi.    Count 6: Acting In Concert; and

      vii.   Count 9: Negligence.

16.     The Arkansas Complaint seeks monetary damages and punitive damages due to Insys' alleged conduct.

105810793\V-1

17. The New York Actions were filed by the County of Rensselaer and the County of Schoharie (collectively referred to as the "New York Counties") in their respective counties. According to the complaints, Insys and the other defendants market and sell opioids around the country, including in New York, that are alleged to be linked to prescription drug abuse in New York.[1] It is further alleged that Insys and the other defendants misrepresented the efficacy and risks of the opioids they sold in their marketing efforts. Rensselaer Compl. ¶¶ 178-733; County of Schoharie's complaint ("Schoharie Compl."), ¶¶ 171-726. Facts specific to Insys' fraudulent conduct are alleged in both complaints. Rensselaer Compl., ¶¶ 674-696; Schoharie Compl., ¶¶ 667-689.

18. Throughout the New York Complaints, the New York Counties allege that Insys was a knowing and willful participant in the systematic process of misleading doctors and patients regarding the effectiveness and addictiveness of opioids to treat non-cancer pain. Specific allegations include:

    i. "Defendants' marketing of opioids for long-term use to treat chronic pain, both directly and with and through third parties, included information that was false, misleading, contrary to credible scientific evidence and their own labels, and lacked balance and substantiation. Their marketing materials omitted material information about the risks of opioids, and overstated their benefits. Moreover, Defendants inaccurately suggested that chronic opioid therapy was supported by evidence, and failed to disclose the lack of evidence in support of treating chronic pain with opioids." Rensselaer Compl. ¶ 310; Schoharie Compl., ¶ 303.

    ii. "Defendants and the Front Groups and KOLs who depended on and worked alongside them were able to affect a sea change in medical opinion in favor of accepting opioids as a medically necessary long-term treatment for chronic pain. As set forth below, each Defendant contributed to that result through a combination of both direct marketing efforts and third-party marketing efforts over which that Defendant exercised editorial control. These deceptive and misleading statements were directed to, and reached, County prescribers and patients, with the intent of distorting their views on the risks, benefits, and

---

[1] The allegations in the two complaints (the "New York Complaints") regarding Insys' conduct are virtually identical. The quotes contained herein reflect the language from the County of Rensselaer's complaint ("Rensselaer Compl.").

- 5 -

superiority of opioids for treatment of chronic pain." Rensselaer Compl. ¶ 356; Schoharie Compl., ¶ 349.

    iii. "But for the misleading information disseminated by Defendants, doctors would not, in most instances, have prescribed opioids as medically necessary or reasonably required to address chronic pain." Rensselaer Compl. ¶ 698; Schoharie Compl., ¶ 691.

    iv. "Defendants' marketing of opioids caused health care providers to prescribe, and the County, through partially funding a medical insurance plan for its employees and its workers' compensation program, to pay for prescriptions of opioids to treat chronic pain. Because of Defendants' unbranded marketing, health care providers wrote and the County paid for prescriptions of opioids for chronic pain that were filled not only with their drugs, but with opioids sold by other manufacturers. All of these prescriptions were caused by Defendants' fraudulent marketing and therefore all of them constitute false claims. Because, as laid out below, the County is obligated to cover medically necessary and reasonably required care, it had no choice but to pay for these false and fraudulent claims." Rensselaer Compl. ¶ 700; Schoharie Compl., ¶ 693.

    v. "Defendants' scheme to change the medical consensus regarding opioid therapy for chronic pain was greatly successful. During the year 2000, outpatient retail pharmacies filled 174 million prescriptions for opioids nationwide, rising to 257 million in 2009." Rensselaer Compl. ¶ 702; Schoharie Compl., ¶ 695.

    vi. "As a direct and foreseeable consequence of Defendants' wrongful conduct, Plaintiff has been required to spend millions of dollars each year in its efforts to combat the public nuisance created by Defendants' deceptive marketing campaign. Plaintiff has incurred, and continues to incur, costs related to opioid addiction and abuse, including, but not limited to, health care costs, criminal justice and victimization costs, social costs, and lost productivity costs. Defendants' misrepresentations regarding the safety and efficacy of long-term opioid use proximately caused injury to Plaintiff and its residents." Rensselaer Compl. ¶ 708; Schoharie Compl., ¶ 701.

    vii. "Financial information where available—indicates that Defendants each experienced a material increase in sales, revenue, and profits from the fraudulent, misleading, and unfair market activities laid out above. …. " Rensselaer Compl. ¶ 727; Schoharie Compl., ¶ 720.

    viii. "Thus, while the opioid epidemic was evident, Defendants, in furtherance of their respective marketing strategies, intentionally concealed their own role in causing it. Defendants successfully concealed from the medical community, patients, and health care payers facts sufficient to arouse suspicion of the existence of claims that the County now asserts. The County was not alerted to the existence and scope of Defendants industry-wide fraud and could not have acquired

- 6 -

DENTONS US LLP
2398 EAST CAMELBACK ROAD, SUITE 850
PHOENIX, AZ 85016-9007
(816) 460-2476

105810793\V-1

such knowledge earlier through the exercise of reasonable diligence." Rensselaer Compl. ¶ 732; Schoharie Compl., ¶ 725.

19. The New York Complaints assert multiple counts against Insys, each of which incorporates the above-described factual allegations regarding Insys' illegal and fraudulent scheme. Rensselaer Compl. ¶¶ 734-789; Schoharie Compl., ¶¶ 727-782. The counts in the New York Complaints asserted against Insys are:

    i.    First Cause of Action: Deceptive Acts and Practices New York General Business Law § 349;

    ii.    Second Cause of Action: False Advertising New York General Business Law § 350;

    iii.    Third Cause of Action: Public Nuisance;

    iv.    Fourth Cause of Action: Violation of New York Social Services Law § 145-B;

    v.    Fifth Cause of Action: Fraud;

    vi.    Sixth Cause of Action: Unjust Enrichment; and

    vii.    Seventh Cause of Action: Negligence.

20. The New York Counties seek to recover, from Insys and the other defendants, compensatory damages, treble damages, penalties, disgorgement of profits, punitive damages and costs. Rensselaer Compl., ¶¶ 742, 774, p. 231; Schoharie Compl., ¶¶ 735, 767, p. 229.

21. The Oregon Action was filed in the Circuit Court of the State of Oregon for the County of Multnomah by the County of Multnomah. According to the complaint, Insys and the other defendants market and sell opioids around the country, including in Oregon, that are alleged to be linked to prescription drug abuse in Oregon. It is further alleged that Insys and the other defendants misrepresented the efficacy and risks of the opioids they sold in their marketing efforts. Complaint in the Oregon Action ("Oregon Compl.") ¶¶ 7-10.

22. Throughout the Oregon Complaint, the County of Multnomah alleges that Insys was a knowing and willful participant in the systematic process of misleading doctors and patients regarding the effectiveness and addictiveness of opioids to treat non-cancer pain. Specific allegations include:

    i.    "…Drug-Maker Defendants began a marketing scheme designed to persuade doctors and patients that opioids can and

- 7 -

should be used for chronic pain, a far broader group of patients much more likely to become addicted and suffer other adverse effects from the long-term use of opioids. In connection with this scheme, Drug-Maker Defendants spent, and continue to spend, millions of dollars on promotional activities and materials that falsely deny or trivialize the risks of opioids while overstating the benefits of using them for chronic pain." Oregon Compl. ¶ 7.

ii. "Each Drug-Maker Defendant knew that its misrepresentations of the risks and benefits of opioids were not supported by or were directly contrary to the scientific evidence. Indeed, the falsity of each Drug-Maker Defendant's misrepresentations has been confirmed by the U.S. Food and Drug Administration ("FDA") and the Centers for Disease Control and Prevention ("CDC"), including by the CDC in its Guideline for Prescribing Opioids for Chronic Pain, issued in 2016 and approved by the FDA ("2016 CDC Guideline"). Opioid manufacturers, including Defendants Endo Pharmaceuticals, Inc. and Purdue Pharma L.P., have also entered into settlements agreements with public entities that prohibit them from making many of the misrepresentations identified in this Complaint in other jurisdictions. Yet even now, each Drug-Defendant continues to misrepresent the risks and benefits of long term opioid use in Multnomah County, Oregon and continues to fail to correct its past misrepresentations." Oregon Compl. ¶ 11.

iii. "Defendants, and each of them, knew that long-term opioid use causes addiction. Nonetheless, driven by the potential for incredible profits, Defendants engaged in a comprehensive campaign of lies and deceptions to overturn centuries-old, accurate scientific, historical, and conventional knowledge about the risks of long-term opioid use. Through their lies and deception Defendants effectively promoted the long-term use of opioids even though there was no scientific basis to support that use. Defendants' comprehensive campaign of lies and deceptions caused opioid addiction to increase exponentially. And that increase has required Multnomah County to expend its limited resources to help those affected and protect the community from harms associated with the opioid epidemic." Oregon Compl. ¶ 27.

iv. "On July 10, 2015, [Insys] received an unlawful trade practices and proposed solution letter from the Oregon Department of Justice. The letter documents the unlawful behavior of [Insys] and three Oregon physicians: Roy Blackburn, MD of Tigard, Oregon, James Gallant, MD of Corvallis, Oregon; and Stuart Rosenblum, MD of Portland, Oregon. [Insys] paid the Oregon Department of Justice $1.1 million to settle the matter." Oregon Compl. ¶ 78.

v. "Drug-Maker Defendants knew about the medical problems associated with long-term use of opioids but chose not to change their marketing strategies and actively promoted the long-term use of opioids." Oregon Compl. ¶ 119.

- 8 -

      vi.    "Drug-Maker Defendants knew that their goal of increasing profits by promoting the prescription of opioids for treatment of chronic-pain would lead directly to increases in health care costs for patients, insurers, and payors, as well as increased costs to governmental entities like Multnomah County who are obligated to provide services to promote public health and safety."  Oregon Compl. ¶ 126.

      vii.    "At all times relevant to this Complaint, Drug-Maker Defendants took steps to avoid detection of and to fraudulently conceal their deceptive marketing and unlawful, unfair, and fraudulent conduct.  For example, Drug-Maker Defendants disguised their own role in the deceptive marketing of chronic opioid therapy by funding and working through third parties like Front Groups and KOLs.  Drug-Maker Defendants purposefully hid behind the assumed credibility of these individuals and organizations and relied on them to vouch for the accuracy and integrity of Drug-Maker Defendants' false and deceptive statements about the risks and benefits of long-term opioid use for chronic pain."  Oregon Compl. ¶ 166.

      viii.    "On information and belief, INSYS paid kickbacks to Dr. Gallant, Dr. Rosenblum, and Dr. Blackburn as compensation for their prolific prescribing of Subsys.  Among other things, these kickbacks were paid in the form of sham speakers fees."  Oregon Compl. ¶ 189.

23.  The Oregon Complaint asserts multiple counts against Insys, each of which incorporates the above-described factual allegations regarding Insys' illegal and fraudulent scheme. *Id*., ¶¶ 328-370.  The counts in the Oregon Complaint asserted against Insys are:

      i.    First Claim for Relief for Public Nuisance;
      ii.    Second Claim for Relief for Abnormally Dangerous Activity;
      iii.    Third Claim for Relief for Gross Negligence
      iv.    Fourth Claim for Relief for Fraud & Deceit; and
      v.    Fifth Claim for Relief for Negligence.

24.  The County of Multnomah seeks to recover, from Insys and the other defendants, compensatory damages in the amount of $250,000,000 and costs. *Id*., ¶¶ 339-340, 351, 357, 365, 370, p. 117.

25.  The Texas Action was filed in the United States District Court for the Eastern District of Texas, Marshall Division by the County of Upshur.  According to the complaint, Insys and the other defendants market and sell opioids around the country, including in Texas, that are alleged to be linked to prescription drug abuse in Texas.  It is further alleged that Insys and the other

DENTONS US LLP
2398 EAST CAMELBACK ROAD, SUITE 850
PHOENIX, AZ 85016-9007
(816) 460-2476

105810793\V-1

defendants misrepresented the efficacy and risks of the opioids they sold in their marketing efforts. Complaint in the Texas Action ("Texas Compl.") ¶¶ 8-15, 34.

26.   Throughout the Complaint, the County of Upshur alleges that Insys was a knowing and willful participant in the systematic process of misleading doctors and patients regarding the effectiveness and addictiveness of opioids to treat non-cancer pain.  Specific allegations include:

    i.   "By the late 1990s or early 2000s, however, each Defendant began a marketing scheme to persuade doctors and patients that opioids can and should be used for chronic pain.  Each Defendant spent, and continues to spend, millions of dollars to promote the benefits of opioids for chronic pain while trivializing or even denying their risks."  Texas Compl. ¶ 8.

    ii.   "Contrary to the language of their drugs' labels, Defendants falsely and misleadingly:  (1) downplayed the serious risk of addiction; (2) promoted the concept of "pseudoaddiction" thereby advocating that the signs of addiction should be treated with more opioids; (3) exaggerated the effectiveness of screening tools in preventing addiction; (4) claimed that opioid dependence and withdrawal are easily managed; (5) denied the risks of higher opioid dosages; and (6) exaggerated the effectiveness of "abuse-deterrent" opioid formulations to prevent abuse and addiction."  Texas Compl. ¶ 9.

    iii.   "As a direct and foreseeable consequence of Defendants' misrepresentations regarding the safety and efficacy of using opioids for chronic pain, Upshur County has spent and continues to spend large sums combatting the public health crisis created by Defendants' negligent and fraudulent marketing campaign."  Texas Compl. ¶ 16.

    iv.   "Defendants dramatically changed doctors' views regarding opioids through a well-funded deceptive marketing scheme.  Each Defendant used direct marketing and unbranded advertising disseminated by seemingly independent third parties to spread false and deceptive statements about the risks and benefits of long-term opioid use."  Texas Compl. ¶ 41.

    v.   "To convince doctors and patients in Upshur County that opioids can and should be used to treat chronic pain, Defendants had to convince them that long-term opioid use is both safe and effective.  Knowing they could do so only by deceiving those doctors and patients about the risks and benefits of long-term opioid use, Defendants made claims that were not supported by, or were contrary, to the scientific evidence.  Even though pronouncements by and guidance from the FDA and the CDC based on that evidence confirm that their claims were false and deceptive, Defendants have not corrected them, or instructed their KOLs or Front Groups to correct them, and continue to spread them today."  Texas Compl. ¶ 77.

DENTONS US LLP
2398 EAST CAMELBACK ROAD, SUITE 850
PHOENIX, AZ 85016-9007
(816) 460-2476

105810793\V-1

    vi.    "Insys committed outright fraud in disseminating its drug, Subsys. Like Actiq and Fentora, Subsys was intended for breakthrough or cancer pain. Because the drug was so expensive, however, the insurance companies would pay for it only if there was prior authorization for the drug." Texas Compl. ¶ 121.

    vii.    "Insys developed an elaborate scam in which their own employees posed on the telephone as employees for prescribing physicians who then contacted the insurance companies to obtain prior authorization for Subsys. Insys' employees had a script to use in which they were instructed to use the words "breakthrough pain" and to avoid the word "cancer" thereby allowing the opioid to be prescribed for chronic pain." Texas Compl. ¶ 122.

    viii.    "Insys intended to deceive prescribing physicians into believing Subsys was safe and effective for chronic pain and deliberately lied to insurance companies to ensure payment for its drug." Texas Compl. ¶ 123.

    ix.    "Thus, Defendants successfully concealed from the medical community and patients facts sufficient to arouse suspicion of the claims Upshur County now asserts. Upshur County did not know of the existence or scope of Defendants' industry-wide fraud and could not have acquired such knowledge earlier through the exercise of reasonable diligence." Texas Compl. ¶ 135.

    x.    "While using opioids has taken an enormous toll on Upshur County and its residents, Defendants have realized blockbuster profits." Texas Compl. ¶ 155.

27. The Texas Complaint includes multiple counts against Insys, each of which incorporates the above-described factual allegations regarding Insys' illegal and fraudulent scheme. *Id.*, ¶¶ 156-188, 194-221. The counts in the Texas Complaint asserted against Insys are:

    i.    First Cause of Action: Public Nuisance;

    ii.    Second Cause of Action: Common Law Fraud;

    iii.    Third Cause of Action: Negligence;

    iv.    Fourth Cause of Action: Gross Negligence;

    v.    Sixth Cause of Action: Violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et. seq.; and

    vi.    Seventh Cause of Action: Unjust Enrichment.

28. The County of Upshur seeks to recover, from Insys and the other defendants, compensatory damages, declaratory and injunctive relief, restitution, civil penalties, punitive and exemplary damages and costs. *Id.*, ¶¶ 168, 176, 183, 188, 217, 221, p. 57.

**The Phoenix Primary Policies -- General**

29.  Phoenix issued to Insys primary liability insurance policies covering the periods from 8/1/2015 to 8/1/2016 and 8/1/2016 to 8/1/2017 (the "Phoenix Primary Policies").

**The Phoenix Primary Policies -- Bodily Injury And Property Damage Liability**

30.  Subject to their other terms and conditions, the Phoenix Primary Policies afford coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" caused by an "occurrence." "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

31.  The Phoenix Primary Policies define "bodily injury" as "[p]hysical harm, including sickness or disease sustained by a person"; or "[m]ental anguish, injury or illness, or emotional distress, resulting at any time from such physical harm, sickness or disease."

32.  The Phoenix Primary Policies define "property damage" as "[p]hysical damage to tangible property of others…"; or "[l]oss of use of tangible property of others that is not physically damaged."

33.  The Phoenix Primary Policies apply to "bodily injury" and "property damage" only if:

> ….
>
> (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
>
> \*\*\*
>
> d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. Of Section II Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

105810793\V-1

    (1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    (2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    (3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

34. The Phoenix Primary Policies all contain a products-completed operations exclusion ("Products Exclusion").

35. The Products Exclusion in the Phoenix Primary Policies excludes coverage for "'[b]odily injury' or 'property damage' included in the 'products-completed operations hazard.'" The "products-completed operations hazard" includes "all 'bodily injury' and 'property damage' occurring away from premises owned by or rented or loaned to you and arising out of 'your product' or 'your work.'" "Your product" is defined, in relevant part, as follows:

    (1)    Any goods or products, including any of 'your biotechnology products' and any of 'your medical products,' other than real property, manufactured, sold, handled, distributed or disposed of by:

        (a)    You;

        (b)    Others trading under your name; or

        (c)    Any person or organization whose business or assets you've acquired....

36. The definition of "your product" also includes:

    (1)    Warranties or representations made at any time, or that should have been made, with respect to fitness, quality, durability, performance, handling, maintenance, operation, safety or use of such goods or products;

    (2)    The providing of, or failure to provide, warnings or instructions with respect to such goods or products....

37. The Phoenix Primary Policies define "your medical product" to mean "any of 'your products' that are or were used or intended for use in health care or the providing of professional health care services."

38. The Phoenix Primary Policies all contain an exclusion for "Expected or Intended" bodily injury ("Expected or Intended Exclusion").

105810793\V-1

39. The Expected or Intended Exclusion in the Phoenix Primary Policies excludes coverage for "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured."

40. The Phoenix Primary Policies all contain an exclusion for injury arising from professional health care services (the "Professional Health Care Services Exclusion"). The Professional Health Care Services Exclusion in the Phoenix Primary Policies excludes coverage for "'[b]odily injury' or 'property damage' arising out of the providing or failing to provide professional health care services."

### The Phoenix Primary Policies -- Personal And Advertising Injury Liability

41. The Phoenix Primary Policies provide coverage for "personal and advertising injury." The Phoenix Primary Policies contain an endorsement defining "advertising injury" as:

> [I]njury, other than "personal injury", caused by one or more of the following offenses:  (1) Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; ....

42. The Phoenix Primary Policies define "personal injury" as:

> [I]njury, other than "advertising injury", caused by one or more of the following offenses: ... (4) Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; ....

43. The Phoenix Primary Policies contain an exclusion for damages in connection with "knowing violation of rights of another," defined as: "'[p]ersonal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

44. The Phoenix Primary Policies contain an exclusion for damages in connection with "material published with knowledge of falsity," defined as: "'[p]ersonal injury' or 'advertising

- 14 -

injury' arising out of the oral or written publication, including publication by electronic means, of material, if done by or at the direction of the insured with knowledge of its falsity."

45. The Phoenix Primary Policies contain an exclusion for "material published or used prior to policy period," defined as: "'[p]ersonal injury' or 'advertising injury' arising out of oral or written publication, including publication by electronic means, of material whose first publication took place before the beginning of the policy period."

46. The Phoenix Primary Policies contain an exclusion for damages in connection with "quality or performance of goods - failure to conform to statements," defined as: "'[a]dvertising injury' arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement.'"

### The Travelers Casualty Umbrella Policies

47. Travelers Casualty issued to Insys "umbrella" liability insurance policies covering the periods from 8/1/2015 to 8/1/2016 and 8/1/2016 to 8/1/2017 (the "Travelers Casualty Umbrella Policies").

48. The Travelers Casualty Umbrella Policies contain substantially similar insuring agreements and exclusions as the corresponding Phoenix Primary Policies issued for the same policy periods. In addition, the Travelers Casualty Umbrella Policies do not respond until the applicable underlying limits have been properly exhausted, or unless the Travelers Casualty Umbrella Policies expressly provide coverage where the Phoenix Primary Policies do not.

### The Coverage Dispute

49. In October 2017, Peter Berardinucci of Aon Risk Solutions, on behalf of Insys, tendered to Travelers claims seeking defense and indemnity for the Arkansas, New York, Oregon and Texas Actions under the Policies.

50. In response to this assertion of coverage and after prior correspondence, Travelers sent declination letters to Insys in December 2017, denying any duty to defend or indemnify Insys under the Policies in connection with the Arkansas, New York, Oregon and Texas Actions. Thus, a

dispute exists between Travelers and Insys as to whether Insys is entitled to coverage under the Policies with respect to the Arkansas, New York, Oregon and Texas Actions.

## COUNT I:

### For A Declaration That Travelers Is Not Obligated To Defend Insys Under The Policies

### (By All Plaintiffs Against Insys)

51. Travelers reasserts and incorporates herein each of the allegations set forth in paragraphs 1-50 above.

52. Pursuant to 28 U.S.C. § 2201, Travelers seeks a declaration that the Policies do not obligate Travelers to defend Insys in connection with the Arkansas, New York, Oregon or Texas Actions because, *inter alia*:

    A.    None of the Arkansas Action, the New York Actions, the Oregon Action or the Texas Action alleges an "occurrence" as defined under the Policies. [Insys'] willful, knowing, and intentional conduct as alleged in those Actions does not constitute an "accident," as required under the relevant definitions;

    B.    None of the Arkansas Action, the New York Actions, the Oregon Action or the Texas Action seeks damages because of "property damage" as defined under the Policies;

    C.    None of the New York Actions, the Oregon Action or the Texas Action seeks damages because of or "bodily injury" as defined under the Policies;

    D.    The Phoenix Primary Policies do not provide coverage for "bodily injury" or "property damage" known by the insured (or any "employee" authorized to receive notice of an "occurrence" or claim) to have occurred prior to the policy period (and any continuation, change or resumption thereof during or after the policy period);

    E.    Each of the Arkansas Action, New York Actions, the Oregon Action and the Texas Action seek damages for losses known by the insured (or any "employee" authorized to receive notice of an "occurrence" or claim) to have occurred prior to the policy period (and any continuation, change or resumption thereof during or after the policy period);

    F.    Any duty to defend the Arkansas Action, the New York Actions, the Oregon Action or the Texas Action is precluded by the Policies' Products Exclusions;

    G.    Any duty to defend the Arkansas Action, the New York Actions, the Oregon Action or the Texas Action is precluded by the Policies' Expected or Intended Exclusions;

DENTONS US LLP
2398 EAST CAMELBACK ROAD, SUITE 850
PHOENIX, AZ 85016-9007
(816) 460-2476

105810793\V-1

    H.    Any duty to defend the Arkansas Action, the New York Actions, the Oregon Action or the Texas Action is precluded by the Policies' Professional Health Care Services Exclusions;

    I.    None of the Arkansas Action, the New York Actions, the Oregon Action or the Texas Action alleges "personal injury" or "advertising injury," as defined under the Policies;

    J.    Any duty to defend the Arkansas Action, the New York Actions, the Oregon Action or the Texas Action is precluded by the Phoenix Primary Policies' exclusions, applicable to claims for "personal injury" and "advertising injury," for damage regarding knowing violation of rights of another, deliberately breaking the law, material published with knowledge of falsity, material published or used prior to the policy period, and quality or performance of goods—failure to conform to statements; and/or

    K.    Any duty to defend the Arkansas Action, the New York Actions, the Oregon Action or the Texas Action is precluded under the Travelers Casualty Umbrella Policies because the applicable underlying limit, as defined by the Umbrella Policies, has not been properly exhausted, and the Travelers Casualty Umbrella Policies do not expressly provide coverage where the Phoenix Primary Policies do not.

53. Insys has asserted that it is entitled to a defense of the Arkansas, New York, Oregon and Texas Actions under the Policies. Travelers disputes any such right to a defense. This dispute constitutes an actual, ripe, and justiciable controversy between the parties.

54. On Count I of the Complaint, Travelers is entitled to judgment declaring that the Policies do not obligate it to defend Insys in the Arkansas, New York, Oregon and Texas Actions.

## COUNT II:

### For A Declaration That Travelers Is

### Not Obligated To Indemnify Insys Under The Policies

### (By All Plaintiffs Against Insys)

55. Travelers reasserts and incorporates herein each of the allegations set forth in paragraphs 1-50 above.

56. Pursuant to 28 U.S.C. § 2201, Travelers seeks a declaration that the Policies do not obligate Travelers to indemnify Insys for the Arkansas, New York, Oregon and Texas Actions because, *inter alia*:

    A.    There exists no "occurrence" as defined under the Policies;

- 17 -

105810793\V-1

B. Insys will not be liable for damages in the New York Actions, the Oregon Action or the Texas Action because of "bodily injury" or "property damage" as defined under the Policies;

C. Insys will not be liable for damages in the Arkansas Action because of "property damage" as defined under the Policies;

D. The Policies do not provide coverage for "bodily injury" or "property damage" known by the insured (or any "employee" authorized to receive notice of an "occurrence" or claim) to have occurred prior to the policy period (and any continuation, change or resumption thereof during or after the policy period);

E. Coverage is precluded by the Policies' Products Exclusions;

F. Coverage is precluded by the Policies' Expected or Intended Exclusions;

G. Coverage is precluded by the Policies' Professional Health Care Services Exclusions;

H. Coverage is precluded for "occurrences," if any, outside the covered period of the Policies;

I. Coverage is precluded by the loss-in-progress, known loss, or known risk doctrines;

J. Insys will not be liable for damages in the Arkansas Action, the New York Actions, the Oregon Action or the Texas Action because of "personal injury" or "advertising injury" as defined under the Policies;

K. Any duty to indemnify is precluded by the Policies' exclusions, applicable to claims for "personal injury" and "advertising injury," for damage regarding knowing violation of rights of another, deliberately breaking the law, material published with knowledge of falsity, material published or used prior to the policy period, and quality or performance of goods—failure to conform to statements;

L. Coverage is precluded to the extent that Insys has failed to comply with the Terms and Conditions in the Policies;

M. Coverage is subject to the "Other Insurance" provisions of the Policies;

N. Coverage is precluded by applicable law and public policy for Insys' violations of Arkansas law, New York law, Oregon law and/or Texas law; and/or

O. Any duty to indemnify is precluded under the Travelers Casualty Umbrella Policies because the applicable underlying limit, as defined by the Umbrella Policies, has not been properly exhausted, and the Travelers Casualty Umbrella Policies do not expressly provide coverage where the Phoenix Primary Policies do not.

- 18 -

57.     Insys has asserted that it is entitled to indemnity in connection with the Arkansas Action, the New York Actions, the Oregon Action and the Texas Action under the Policies. Travelers disputes any such right to indemnity. This dispute constitutes an actual, ripe and justiciable controversy between the parties.

58.     On Count II of the Complaint, Travelers is entitled to judgment declaring that the Policies do not obligate it to indemnify Insys with respect to the Arkansas, New York, Oregon and the Texas Actions.

**PRAYER FOR RELIEF**

**WHEREFORE**, Travelers respectfully prays judgment against Insys as follows:

(1)     Declaring that the Policies do not obligate Travelers to defend Insys in the Arkansas Action, the New York Actions, the Oregon Action and the Texas Action;

(2)     Declaring that the Policies do not obligate Travelers to indemnify Insys in connection with the Arkansas Action, the New York Actions, the Oregon Action and the Texas Action;

(3)     Attorneys' fees pursuant to A.R.S. § 12.301.01;

(4)     Costs; and

(5)     Granting to Travelers such other and further relief as the Court may deem to be just and appropriate under the circumstances.

Dated:  December 21, 2017             DENTONS US LLP


By*/s/ Steven M. Aaron*
   Steven M. Aaron (AZ Bar No. 028656)
   2398 E. Camelback Road, Suite 850
   Phoenix, AZ 85016-9007

105810793\V-1

DENTONS US LLP

Ronald D. Kent *(pro hac vice to be filed)*
Susan M. Walker *(pro hac vice to be filed)*
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017

- and -

DAY PITNEY LLP
KATHLEEN D. MONNES *(pro hac vice to be filed)*
JOSEPH K. SCULLY *(pro hac vice to be filed)*


By:*/s/ Kathleen D. Monnes*
    Kathleen D. Monnes
    242 Trumbull Street
    Hartford, CT 06103-1212

Attorneys for Plaintiffs
Travelers Property Casualty Company
of America and
The Phoenix Insurance Company

- 20 -

105810793\V-1